Williams *v.* Warren.

William Williams, Appellant, *v.* Julius M. Warren, Appellee.

APPEAL FROM COOK.

Boundaries to land may be ascertained by the aid of parol evidence, which may be used to identify, explain or establish the objects of the call in the deed. A deed will not be held void for want of description, until such evidence has been resorted to and failed.

All monuments, objects and things referred to in a deed, for the purpose of locating a tract of land, may be established and identified by evidence extrinsic the deed.

A tract of land mentioned in an award, may be ascertained in the same way, or by the same proofs, as if it were mentioned in a deed. A description, if sufficient in a deed, will also be sufficient in an award.

A court of equity may rectify a mistake of arbitrators, in omitting the name of the person from an award to whom certain land was to be conveyed, if the proof is clear and explicit as to what was intended by the arbitrators.

The language of the submission will control the powers of the arbitrators.

This bill of complaint was filed in Circuit Court of Du Page county, and by change of venue was re-filed in County Court of Cook county, and again filed April 3rd, 1851, in Circuit Court of Cook county.

The bill sets out the following bond of submission:

" *Know all Men by these Presents*, That I, William Williams, of the county of Du Page, and State of Illinois, am held and firmly bound unto Julius Warren, Warren Smith, Joseph Wilson and Reuben Austin, of the same county, in the sum of one thousand dollars of good and lawful money of the United States, to be paid the said Warren, Smith, Wilson and Austin, their executors, administrators or assigns, for which payment well and truly to be made I do bind myself, my heirs, executors and administrators, firmly by these presents. Sealed with my seal, dated this *seventeenth* day of September, A. D. 1844.

" The condition of this above obligation is such, that if the above bounden William Williams, his heirs, executors and administrators, on his and their part, shall and do, in all things, well and truly stand to, obey, abide by, perform, fulfill and keep the award, order, arbitrament and final determination of James Brown, David McKee and Timothy Woodward, arbitrators indifferently elected and named, as well on the part and behalf of the above bounden Williams as of the above named Warren, Wilson, Smith and Austin, to arbitrate, award, order, adjudge and determine, of and concerning all and all manner of actions, cause and causes of action, quarrels, controversies, damages and claim whatsoever, at any time heretofore had, made, suffered, committed, or depending by and between the said parties, for or on account of, concerning or in any wise affecting the following

described real estate, situate, lying and being in the county of Du Page, and State of Illinois, and known and described as being the south-west quarter of section number thirty-one, (31,) in township number thirty-nine (39) north, of range number nine (9) east of the third principal meridian, and which is the same property to which the said Williams has proved up a pre-emption right, and which said pre-emption right is contested, and also all other the lands, real estate and property belonging to either or any of the above named Julius Warren, Warren Smith, Joseph Wilson and Reuben Austin, which may be affected by the award to be made by the said arbitrators, *the object being to settle all disputes that may exist between the parties as to claim lines, whether said claims have become the deeded property of any of the parties hereto or not*, so as the said award be made in writing, under the hands of the said Brown, McKee and Woodward, or any two of them, and ready to be delivered to the said parties in difference, or such of them as shall desire the same, on or before five o'clock, P. M. of Thursday, the nine-teenth day of September, in the year of our Lord one thousand eight hundred and forty-four, then this obligation to be void, or else to remain in full force. And the said William Williams further covenants to and with the said Warren, Wilson, Smith and Austin, that the said submission shall be made to the above named arbitrators on their own knowledge, no evidence to be adduced on the part of either party; and said Williams further agrees and covenants to pay the sum of one thousand dollars to said Warren, Wilson, Smith and Austin, if he fails, refuses or neglects to perform, upon his part, the award to be made by said arbitrators, when the same shall be made, and the said sum of one thousand dollars is hereby declared to be liquidated dam-ages, to be recovered by the said Warren, Wilson, Smith and Austin, from said Williams, upon his making such failure, refusal or neglect to perform said award as aforesaid; and the said Williams further covenants and agrees, under the same penalty, to and with the said Warren, Wilson, Smith and Austin, that in case his pre-emption shall be set aside, and any member of his family, or any person for him, or claiming under or in his right, or by his suggestion or direction, shall obtain said prem-ises, that he will obtain from them such conveyances or disposi-tion of any portion of said premises as said award shall require and direct, to such persons as shall be directed in said award."

The bill avers the making of a bond of like penalties and like conditions on the part of complainants, the delivery thereof, on the day and date of former bond, to said Williams, and its acceptance by him. Also avers that it was mutually understood

that said Wilson would not be a party to said arbitration, nor join in said bond.

The bill further avers, that on the 19th day of September, 1844, the said arbitrators, by the consent of all the parties, proceeded to arbitrate and adjudge in the premises, and on that day did award and adjudge, *in substance,* as follows:

" The decision of arbitrators, in suit pending between J. Warren, W. Smith and R. Austin, of one part, and Wm. Williams, is as follows: the said Williams shall deed to said R. Austin up to his original claim line in the timber, and said Austin is to pay to said Williams one dollar and twenty-five cents an acre, with twelve per cent. interest from the time the land was paid for up to the time of receiving of his deed, which shall be within sixty days; a warranty deed.

"Also said Williams shall deed to said W. Smith, in the timber up to his original claim line, for which said Smith shall pay to said Williams government price from the time the land was paid for at the office, with twelve per cent. interest until he receives his deed, which shall be within sixty days; a good warranty deed.

" The decision of the arbitrators is as follows: said William Williams shall deed twenty-two and a half acres off from the east side of the east eighty of fractional quarter that Williams pre-empted in the *big woods.* Furthermore, it is decided that each party shall pay what costs they have caused to be made."

There was the following further award on a separate piece of paper:

" The decision of the arbitrators in the suit now pending between J. Warren, Warren Smith, R. Austin, is as follows: the said Warren Smith shall deed up to the original claim line on the prairie, which said Smith pre-empted, and said William Williams shall pay to said Smith government price, with twelve per cent. interest from the time the land was paid for until Williams receives his deed, which shall be within sixty days; a good and sufficient warranty deed. Each party shall be at the expense of surveying, and their deeds; furthermore, it is decided that each party shall pay what costs they have made."

Complainants represent that said award was, on said September 19th, 1844, delivered to said Williams, and has been ever since in his possession, and they have not been permitted to see it, and ask that said Williams be compelled to produce and file the same. Also represent that said award was made as aforesaid, ready to be delivered by the time specified in said bond; and also that the land awarded to said Austin amounted to 6 $\frac{65}{100}$ acres, and was part of tract pre-empted by Williams; and also the land awarded to said Smith amounted to 36 $\frac{49}{100}$ acres, and

that said Smith did, within said sixty days, tender to said Williams the sum of $1.25 per acre, with twelve per cent. interest, pursuant to said award, and that Smith offered, and is ready to convey to Williams, pursuant to same.

Complainants further represent that the arbitrators, in awarding the 22½ acres, to be deeded as in said award is mentioned, by *mistake* and *accident* left out the name of said Julius M. Warren as grantee of said conveyance; that the lands to be deeded as per award, by said Williams to complainants, were part of same tract mentioned in said bonds, and of the same lands pre-empted by Williams, to wit: part of S. W. ¼, S. 31, 39, 9, and the same was in dispute between the parties, and also that the land awarded to be deeded to Williams by Smith, which he had purchased, was part of S. W. ¼, S. 35, 39, 9.

Specific relief asked. That said Williams convey according to said award. Oath not waived.

Leave was given complainants to amend their bill.

An amended bill was filed first, November 7th, 1849, in Cook County Court.

Said *amended* bill mentions *original* bill, *change of venue*, and the order of Cook County Court granting leave to *amend* the bill. *Amended* bill sets out that on or before September 17, 1844, certain disputes between the parties existed, in relation to their claim lines, and the equity and right of title of said complainants to parts of said S. W. ¼, S. 31, 39, 9, to which said Williams had proved up a pre-emption, and to determine these disputes and their equitable rights, the parties agreed to arbitrate, and that said Williams, for this purpose, entered into the following bond: (which is before recited.)

Complainants aver the making and delivery of bond on their part, and the withdrawal of Wilson by consent of all parties, as in *original bill.*

Complainants represent that on September 19, 1844, said arbitrators having assumed the burden of arbitration, did, by the consent of said Williams, the parties being present, arbitrate and award in the premises, and made their award in writing, under their hands and seals, and were about to make copies thereof, to be delivered to the several parties, but upon the solicitation of Williams, and his false pretenses and representations, they delivered said award to him, and that he fraudulently retained the same, and refused to deliver or to show the same to said arbitrators, or to said complainants.

Complainants *charge* that the counsel of Williams has given them what he *pretends* is a copy of said award, *in substance*, as follows: (which award is before recited, appearing on two pieces of paper.)

Complainants represent that it is represented by said arbitrators that said *pretended* copy is not a true copy of said award, as made by them and delivered to said Williams, as aforesaid, but that the *original* award so made by them, awarded the $22\frac{1}{2}$ acres to said Julius M. Warren, and therefore the said Warren especially charges that said tract was awarded to him, and that his name had been fraudulently erased, by said Williams, or some one, from said award, and they charge if said *pretended* copy is a true copy, the name of Julius M. Warren was omitted in said award by mistake.

They represent that the award was ready to be delivered by the time specified in said bond, but the same was prevented from being copied and delivered, by the fraudulent representations and conduct of said Williams.

They further represent that the land awarded to Austin amounted to $6 \frac{65}{100}$ acres, and was part of the land pre-empted by Williams; that they were ready and offered to pay $1.25 per acre, and twelve per cent. interest thereon, for said land, and they aver that Williams, within said sixty days, upon the offer of said Austin to pay said money and interest thereon, refused to convey the said land. And also that the land awarded to said Smith amounted to $36 \frac{40}{100}$ acres; that Smith, within said sixty days, tendered to Williams $1.25 per acre, with interest thereon, as aforesaid, and also a readiness to perform, at all times, the said award on their part; and also that Smith was ready and offered, and still is ready to convey to Williams, pursuant to said award.

They aver that said Warren, within said sixty days, tendered to said Williams the sum of $1.25 per acre, with interest thereon at twelve per cent., for the land so awarded to him, and he now offers to pay the same; also avers that said lands awarded to be deeded by Williams, were parts of land mentioned in said bond, and part of the same pre-empted by him, to wit: S. W. $\frac{1}{4}$ S. 31, 39, 9, and that the land awarded to Williams, is part of S. W. $\frac{1}{4}$ S. 35, 39, 9, purchased by said Smith of government, and which said land, up to claim lines, amounts to $9 \frac{78}{100}$ acres, and that they file a deed thereof to said Williams, for reference, etc.

Tract awarded to Austin: Com. at S. E. cor. of S. W. $\frac{1}{4}$, S. 31, thence N. 84 rods, thence W. 4 rods 13 links, thence on a direct line to strike S. line of said S. W. $\frac{1}{4}$ 13 rods W. of said S. E. cor., thence E. 13 rods, to beg., containing $6 \frac{36}{100}$ acres.

Tract awarded to Smith: Com. 13 rods W. of said S. E. cor., thence W. to W. line of said sec., thence N. 32 rods, thence E. parallel with S. line to strike said Austin's W. line, thence

35

southerly along Austin's W. line, to south line of section, containing 36 $\frac{49}{100}$ acres.

Lands awarded to Warren, being 22½ acres off of the east side of said S. W. ¼ Sec. 31, exclusive of the lands awarded to Austin and Smith.

Tract awarded to Williams. Com. on W. line of Sec. 35, 3.75 chains from S. W. cor. of said Sec., thence N. 5 deg. 10 min. on section line 34 chains 16½ links, to centre of highway, thence along centre of highway, 4 deg. 15 min. S. of E. 5 chains 80 links, thence S. 5 deg. 15 min. W. 32 chains 25 links to beg., containing 9 $\frac{78}{100}$ acres, all of said lands being in T. 39, R. 9 E. of 3rd P. M.

The bill shows a conveyance of lands awarded to Williams, by said Smith and wife, August 13, 1847, to George Packard, and a conveyance of said lands by Packard and wife, August 31, 1847, to said Julius M. Warren, and an offer of Warren to convey to Williams, as per award.

Complainants aver a readiness to perform said award on their part, and a refusal on the part of Williams.

Specific relief prayed as in original bill.

The answer of defendant says that on Sept. 17, 1844, he had proved up a pre-emption, and purchased at the land office of the United States, said S. W. ¼ of Sec. 31, 39, 9, in the timber, and that said land, in all respects, lawfully and legally was his property. Also says that at and before said time he had made a claim to other land upon the prairie, and had made claim lines, which were well known to complainants; that he had pre-empted the said prairie, and entered the same, except a small strip of about nine acres; which was cut off from his claim by the government survey, and was entered by said Smith, with a full knowledge of his right thereto, the same having been improved and fenced by said defendant, and in his actual possession, and that said Smith, at the time he entered said strip, agreed to convey the same to him; that he settled upon said lands and made the claim thereto in 1834, and had remained in possession ever since.

Defendant admits that on or about Sept. 17, 1844, there did exist some disputes between the parties, *as to where some original claim lines run,* and for the purpose of defining and settling these lines, the parties agreed to submit the same to the arbitrators aforenamed, and that said bond may be a copy, and that said complainants executed a bond of submission to him. He states that he has no recollection about Wilson withdrawing from said arbitration, or of any agreement in relation thereto.

He denies that said arbitrators determined or adjudged the disputes referred to them. He admits that said arbitrators met

about the time stated in said bill, and 'for the purpose therein stated; that he was present, but that all of complainants were not present.

And he says that while they were so together, the said arbitrators had the custody and possession of the bonds of submission, and then and there made and signed what they called their " decision," on two separate pieces of paper, and one or more of said arbitrators asked who would pay for their time, etc., and said they would not give up the papers until they were paid; defendant asked if they would trust him; they said they would, and upon his promising to pay, they gave him the bond coming to him, and two pieces of paper, called their " decision."

He avers that said arbitrators professed to have concluded their labors, and that nothing was said about making copies, but that they separated without any intention expressed of meeting again. He says he has no recollection of promising said arbitrators to return to them said pieces of paper, or of their requesting him so to do, or of his refusal, and that said decision of said arbitrators was not altered after the same was given him, that he soon thereafter handed the same to his counsel, Scammon & Judd.

He denies that said complainants, or either of them, within said sixty days, or at any time since, tendered to him any money for any of said lands, and that said Smith ever tendered to him a deed of said *prairie lands*, in said bill and said decision mentioned, but, on the contrary, alleges that said Smith ever refused to give him a deed of said *prairie lands;* and after said decision, said Smith sold said prairie land to George Packard, who afterwards sold the same to said Warren, who has for the last five years deprived him of the possession thereof.

He avers that he was in the country, and made his claim to the timbered land aforesaid, long before Smith or Austin came into this State, and that said quarter section did not embrace any land of theirs whatever, nor were they entitled to any portion thereof, nor was said Warren entitled to any part thereof in law or equity. Also avers that said arbitrators had no power to award that either party should convey to the other, or, if at all, it was only in case his pre-emption should fail; and he avers that the same did not fail, but that his title to said quarter section remained perfect; that it was the duty of said arbitrators only to fix upon, determine and locate the claim lines of the respective parties, as stated in the bond.

He avers that having awarded in matters outside of said bond of submission, their said decision and award is void. He denies that said arbitrators made any mistake, except in the subject of difference submitted to them. He states if said arbitrators had

authority to direct conveyances (which he denies) the said award is *uncertain* and *void;* it leaves the parties to determine where the claim lines run, and to make surveys ; uncertain in description, in quantity, and as to parties.

He says that the bond given by complainants to him, and said papers, delivered to him by said arbitrators, cannot now be found ; that he believes the same have been lost or mislaid.

A general denial of all other matters not answered unto, confessed, admitted, or denied.

Complainants afterwards filed their *supplemental* bill, with an order for an injunction. Said supplemental bill is the same in substance and effect as the amended bill, and was filed for the purpose of enjoining said defendant from committing waste, etc.

The answer is same in substance and effect as defendant's former answer to amended bill. He admits he has taken timber from said premises, and claims he has a perfect right so to do, as he is advised and believes.

October 25th, 1858, a decree was entered as follows, by MANNIERE, Judge.

Decree recites that, *it appearing* to the court from the amended bill, etc., proofs, etc., and *testimony of James Brown, taken after the hearing of the cause,* that prior to September 17, 1844, claims had been made upon government lands in DuPage county, by the several parties, and one Joseph Wilson, and that disputes had arisen about the rights of the parties, growing out of their claims ; that to settle these disputes, on said September 17, 1844, they, with said Wilson, submitted these matters of difference to Timothy D. Woodward, Joseph Brown, and David McKee, for arbitration ; that said Joseph Wilson, by mutual consent of the parties, withdrew from the arbitration ; that said arbitrators did, on September 19, 1844, arbitrate in the premises, and make their written award as follows : (setting it out); that the subject of submission and award was concerning real estate in DuPage county, Ill., known as S. W. ¼ Sec. 31, 39, 9, pre-empted and purchased by said Williams ; that said Austin, previous to the pre-emption, had paid the son and agent of said Williams, $1.25 per acre for the land so awarded him ; that Williams had refused to convey the same; it is therefore ordered, etc., that Williams, within thirty days, convey to said Austin that part of said S. W. ¼ Sec. 31, 39, 9, up to his, said Austin's, original claim line, so awarded to be conveyed by said Williams to said Austin.

It also appearing, that within sixty days from the making of said award, Smith offered to pay Williams $1.25 per acre for each acre awarded to him, and 12 per cent. interest from the date of purchase of said land, (being $46.60,) and demanded

a conveyance, and that Williams refused the money and to make the conveyance, it is further ordered, etc., that Smith pay Williams, within ten days, the sum aforesaid, and that thereupon said Williams, within thirty days, convey by warranty deed, to Smith, that part of said S. W. ¼ Sec. 31, 39, 9, in the timber, up to his, said Smith's, original claim line.

It also appearing, that in the award, (here follows that part which mentions the 22½ acres,) the name of Julius M. Warren was omitted by mistake, and that it was the determination of said arbitrators that Williams should convey said 22½ acres to said Warren, it is therefore ordered, that the said award, in this respect, be corrected by inserting the name of Julius M. Warren after the words " big woods ;" and it further appearing from the amended bill, etc., proofs and testimony of James Brown, introduced as aforesaid, the said fractional quarter section pre-empted by Williams was in the " big woods," and is the S. W. ¼ Sec. 31, 39, 9, and that said 22½ acres was awarded to be taken from the east side of east eighty of said quarter Sec., after taking out of said quarter Sec. the land awarded to said Austin and Smith, It is ordered, that Williams within thirty days, convey to said Warren 22½ acres off from the east side of east eighty of the fractional quarter section that Williams pre-empted in the big woods ; that such conveyance be made off the east side of said eighty, exclusive of that decreed to be conveyed to Austin and Smith.

It also appearing, that Williams had made claim in the prairie, that the lines of said claim run over and upon the south half of Sec. 35, 39, 9, on that part thereof pre-empted by Smith ; that said arbitrators awarded Smith to convey to Williams up to his original claim lines on the prairie, which Smith pre-empted ; and said Williams should pay within 60 days to said Smith government price therefor, and 12 per cent. interest thereon ; and that said Smith did within said 60 days offer to convey said land so awarded, on the said Williams paying him $1.25 per acre, and interest thereon as aforesaid ; that Williams refused to receive said deed and pay said money, and that by the amended bill, and amendment thereto, made upon the hearing, etc., proofs, etc., that the land so awarded to be conveyed to Williams, is part of south half of section 35, 39, 9, (metes and bounds and courses given); that said land was conveyed by Smith to Packard, and afterwards by Packard to Warren, and Warren having, by the said amendment, averred his readiness to convey according to said award : It is therefore ordered, etc., that within 30 days said Williams pay said Warren $1.25 per acre for each acre of said land so awarded, with 12 per cent. interest thereon, as aforesaid ; and that thereupon said Warren did con-

vey the said land to said Williams, up to the original claim
lines on the prairie which said Smith pre-empted.

To all of which orders, etc., the defendant at the time ex-
cepted.

GOODRICH, FARWELL & SMITH, for Appellant.

FARNSWORTH, EASTMAN & BEVERIDGE, for Appellee.

WALKER, J.   It is urged that the award is uncertain in fixing
the boundaries of the portions of land to be conveyed, by refer-
ence to claim lines.   When grants and conveyances of lands are
made, the usual mode of describing the premises, conveyed, is
by reference to natural or artificial monuments as boundaries,
and by means of which the premises may be found and distin-
guished from other tracts or parcels of land.   The same object
is also attained by describing the premises conveyed by a spe-
cific name; but in either case the location is not always deter-
mined alone by the description in the conveyance, independent
of extrinsic evidence.   The deed describes the objects bounding
the premises, but parole evidence usually is resorted to, for the
purpose of identifying the objects themselves.   And no principle
of law is better settled than that any description adopted in a
deed, by which the premises intended to be conveyed, may be
identified and distinguished from all other lands, is sufficient.
And it is equally well settled that all monuments, objects and
things referred to in the deed for the purposes of locating the
land, may be established and identified by extrinsic evidence.
In most instances, however perfect the description employed by
the conveyance, the premises could not be located and identified,
without reference to extrinsic evidence, either more or less
proximate.   And for the purpose of sustaining a grant, extrinsic
evidence may always be used to identify, explain or establish
the objects of the call in the deed.   And when calls are made,
whether of objects or of distance, courts will never presume
that the same may not be established by parole evidence, and
will not until such evidence has been resorted to and failed,
hold a deed void for want of description.   But it is otherwise
when there is a want of all description.

In this case the award requires conveyances to be made of
certain portions of land, by the parties, up to the original claim
line.   Now if the term claim line, has either a general or local
specific meaning which will enable the boundary to be found and
identified, it is sufficient to enable the land to be located, and
would therefore be sufficient to support the grant.   It is not
necessary to the validity of a conveyance that the most public,

notorious and easily proved objects, should be adopted in the description. The parties may if they choose, adopt others, and if the thing referred to has an existence and is capable of identity by proof, it is sufficient. The arbitrators in this case have referred to " original claim lines," as things that have an existence, and we will not presume that they do not exist, or that they are incapable of being located and established by proof. When used they are as definite as the lines of the government surveys, and if the call had been for such lines, it would not have been more certain that it is by this description. And if contained in a deed, it would be amply sufficient, and no reason is perceived, why it is not equally good in an award.

It was also urged that the award was insufficient, inasmuch as it left the land, to be surveyed by the county surveyor. In this objection we are unable to perceive any force. Here were different persons having conflicting claims, to portions of the same lands, and to settle these disputes, they submit the matter to arbitrators of their choice, who after having heard and investigated the matters in dispute, award that one of the claimants, shall convey a certain portion on a designated side of the land he claims, running up to the original claim line, to another claimant. And so of all the others. Now if a deed of conveyance is executed for a certain number of acres to be taken from a designated side or end of a described tract of land, it would not be denied, that such a description would be abundantly certain to pass the land. No one would contend that the grant was void, because the survey had not been made, the lines and corners established, and the monuments erected and described in the deed. Nor would it be contended that it was void because it would have to be surveyed to designate the land and fix the boundaries, to conform to the call of the deed. And no reason is perceived, why a description which is admitted to be sufficient in a deed, should not also be good in an award. We do not perceive any force in the objection, that when the survey shall be made, that a contest and dispute may be produced as to its correctness.

Had the arbitrators located and designated the lines, the parties could if they were disposed to be contentious, have just as readily disputed as to where they had been located, as to dispute the correctness of the survey when made. The question is not can the parties dispute the things settled, but does the award on its face, leave the rights of the parties so uncertain, as to render litigation necessary to determine what those rights are. For with the contentious, all things may be disputed however clear and certain they may be. In this case, the award on its face, does show that the land is capable of being located and

designated.with absolute certainty, if the claim lines called for have an existence that can be established. When we take into consideration that these parties had made and surveyed their claims to these lands, before the government surveys were made; and that when they purchased of government, it was the mutual agreement of the parties that they should severally hold according to their claim lines, and not in accordance with the government lines, by which their purchases were made; and that they would convey to each other in conformity with that agreement, all difficulty is at once removed. We then see, that as some of the parties had refused to convey the portions held by them and embraced within the boundaries of the claims of the others, to avoid litigation, the matter was submitted to arbitration; and when the expression is used to convey up to the claim lines, reference is had to the lines established by the parties, when they located their several claims. And for aught that appears, those claim lines may be as notorious and as certainly established as those of the government surveys. We therefore think, that the award is not so uncertain as to render it void. If the parties should be unable to locate and establish these claim lines, they are left in precisely the same situation of a party who holds lands by patent, from the government, and should be so unfortunate as to be unable to establish its boundaries; or a person who holds a conveyance for lands described by objects, that cannot be found, so as to designate the lands. The court could not until proof was heard, determine that the deed was void. In this case, witnesses testify that they can locate the premises by the description used in the award, and if that be so, the description must be held sufficient for the purposes of this proceeding.

It was again objected that the court had no power to rectify the mistake of the arbitrators, in omitting the name of Julius M. Warren, as the person to whom the twenty-two and a half acres was directed to be conveyed. There is no head of chancery jurisdiction more firmly established than that mistakes may be corrected by a court of equity. And under this branch of chancery jurisdiction, deeds, covenants, contracts, agreements, notes and every species of writings, except wills and deeds of *femmes covert*, are reformed and mistakes corrected, so as to conform to the intention of the parties. And awards should not be, nor are they an exception to the rule. Records, judgments and decrees, are constantly amended in accordance with the facts, and in promotion of justice, and for the purpose of securing the rights of parties, and every principle of equity and good conscience, would require that the same rule should be applied to awards. But in making such corrections the evidence should

be clear and explicit, as to what was intended by the arbitrators, and that it was an accidental omission by mistake.   In this case the award on its face shows there was a mistake, in omitting the name of the person to whom the conveyance was to be made, and the proof is clear and explicit, that Julius M. Warren's name was intended to have been inserted, but by mistake was omitted.   This is different from an effort to insert a new clause, varying the provisions and terms of an award, but is only carrying out provisions already made by the award.   It had required the appellant to convey this land, but omitted the name of the grantee.   By the insertion of the name of appellee the rights and obligations of appellant are not increased or changed; he is still but required to convey the land specified in the award.

It was also urged, that the submission did not authorize the arbitrators to award conveyances.   The language of the submission, referring the differences to the arbitrators, is as follows : " To arbitrate, award, order, adjudge and determine of and concerning all, and all manner of actions, cause and causes of action, quarrels, controversies, damages and claim whatsoever, at any time heretofore had, made, suffered, committed, or depending by and between the said parties, for or on account of, concerning or in anywise affecting the following described real estate, situate   *   *   *   *   *   *   and which is the same property, to which the said Williams has proved up a pre-emption right, and which said pre-emption right is contested, and also all other the lands, real estate, and property belonging to either or any of the above named Julius Warren, Warren Smith, Joseph Wilson and Reuben Austin, which may be affected by the award to be made, by the said arbitrators ; the object being to settle all disputes that may exist between the parties, as to claim lines, whether the claims have become the deeded property of any of the parties hereto, or not, so as the said award be made in writing," etc.   It was also by the submission agreed, that the award should be made on the knowledge of the arbitrators, without hearing evidence, and the appellant covenanted to perform the award ; and " that in case his pre-emption shall be set aside, and any member of his family, or any person for him, or claiming under or in his right, or by his suggestion or direction, shall obtain said premises, that he will obtain from them such conveyances or disposition of any portion of said premises, as said award shall require and direct, to such person as shall be directed in said award."   When this language is considered, it will be seen that it is broad and comprehensive enough, to embrace the power to award in regard to all disputes growing out of the questions of ownership, to the various portions of these lands.

It is true, that it does recite, that the object is to settle all dis-' putes that may exist between the parties, as to claim lines, whether the claims have become the deeded property of any of the parties or not, so that the award be made in writing and under the seal of the arbritrators. If it only, as was contended, authorized the arbitrators to fix the lines, when they became established by the award, it would necessarily affect the title to the land between the disputed lines and the line so fixed. But the language employed, we think, was broader and more comprehensive, and contemplated that the arbitrators should award conveyances to be executed, otherwise only a part of the differences would have been settled, and the express object was to settle all differences; and that such was the intention of the parties, is made more manifest, from the covenant of appellant, to procure conveyances to be made to the person, to whom directed by the award. From this language, we can come to no other rational conclusion, than that the submission conferred the power to award the execution of deeds to end all strife, litigation and disputes.

We are therefore of the opinion, that the Circuit Court committed no error in decreeing that Julius M. Warren's name be inserted in the award, and that appellant execute the deeds in the manner, and with the description required by the award; and that the decree should be affirmed, except that portion which relates to the costs. And that the costs of the court below be equally divided among all the parties to the proceeding, and that the appellants pay the costs of this court.

*Judgment affirmed.*